FILED

2011 May-19  AM 11:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

STROTHER S. WOLFE,

     Plaintiff,

vs.                                           CASE NO. CV-10-J-1039-S

JOHN E. POTTER, Postmaster General,
United States Postal Service,

     Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 32), brief (doc. 33), and evidentiary submissions (docs. 34 and 35) in support of its motion, to which the plaintiff has untimely responded (doc. 38).[1]  Despite its untimeliness, the court has considered the plaintiff's submissions.  Having read and considered the motion, the memoranda of law and the evidentiary submissions, as well as the pleadings filed by the parties to date, the court finds the motion for summary judgment is due to be granted, as set out below.

## I.  PROCEDURAL HISTORY

---

[1]By Scheduling Order entered July 22, 2010, the plaintiff had twenty-one (21) days to file a response to the defendant's motion (doc. 6).  Defendant filed his motion for summary judgment on March 31, 2011.  Thus, the plaintiff had until April 21, 2011, to file a response in opposition. On that date, the plaintiff filed a motion to extend time to file his response (doc. 36), which the court granted (doc. 37).  Thus, the plaintiff had until May 6, 2011, to file a response in opposition to the motion for summary judgment.  The plaintiff filed nothing until May 17, 2011.

Plaintiff commenced this action by filing a complaint (doc. 1) alleging that the defendant discriminated against him because of his disability, subjected him to a hostile environment,  and retaliated against him, all in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq,* as applied through the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, to federal employees.[2]

## II.  FACTUAL BACKGROUND

Considering the evidence before the court in the light most favorable to the plaintiff, the facts of this case are as follows:

The plaintiff has been employed by the defendant as a maintenance mechanic since August 2002. Complaint, ¶ 6.  The plaintiff has Attention Deficit Hyperactivity Disorder ("ADHD"), for which he sometimes takes medication.  Complaint,  ¶¶ 7-8.  However, ADHD has never caused the plaintiff to be unable to perform any essential function of his job and has never caused the plaintiff to ask for or need any accommodation to perform his job.  Complaint, ¶¶ 8-9.  It does not affect any of his activities of daily life, he has no limitations, restrictions or problems relating to it, and has no more difficulties performing any activity than an average person.  Plaintiff

---

[2]Because the plaintiff brings one claim that arose before the January 1, 2009, amendments to the ADA, and one claim that post-dates the amendments, the court has considered both the pre-amendment and post-amendment statutory requirements to prevail on a claim under the ADA and the ADAAA for plaintiff's respective claims.

depo. at 16 (submitted as defendant ex. B).

The plaintiff asserts that since he disclosed that he had ADHD during his interview, and a month later disclosed that he began taking medication for it, his supervisors and other management personnel created a hostile environment based on his disability.  Complaint, ¶¶ 7-8, 10; DeSorbo declaration ex. A at 00078-79.  The plaintiff's claims of hostile environment date back to 2003, when he was leaning back in a chair that broke and James Evans, his supervisor, proposed a seven day suspension, which was later reduced to a letter of warning.[3]  Complaint, ¶ 10.B; Evans depo. at 25, submitted as defendant ex. C.   In challenging a suspension for this, plaintiff informed Evans that plaintiff had ADD or ADHD.  Evans depo. at 77.  Evans told plaintiff that if he had limitations, he needed to bring medical documentation and defendant would make accommodations, but the plaintiff never brought anything in for this purpose.  Evans depo. at 113-114.

The plaintiff filed a counseling request with the EEO office due to a claim of discrimination on June 18, 2008, after he received progressive discipline for being out of his work area on June 7, 2008.[4]  DeSorbo declaration ex. A, at 00031, 00037.  He

---

[3]The defendant has a progressive discipline policy which includes a letter of warning, a seven-day suspension, a 14 day suspension, and then termination. Evans depo. at 33.

[4]The record reflects this complaint claimed retaliation and discriminatory actions against him dating from June 2005, December 2006, and May 2007.  Defendant ex. A, at 00051. Because these events all occurred one to three years prior to filing his EEO complaint, well

then filed a formal complaint of discrimination and hostile environment as an EEO charge dated September 24, 2008.   DeSorbo declaration ex. A, at 00011, 00060. That claim concerned his removal from employment on June 22, 2008, for unsatisfactory work performance.   DeSorbo declaration ex. A, at 00014; 00085.  He asserted that his termination was based on discrimination due to his race (white), sex (male), and disability (ADD/ADHD).  *Id*, at 00014, 00017.  However, during the investigative phase of his complaint, the plaintiff clarified that he believed he had been discriminated against based on his race and disability.  *Id.,* at 00016, 00017.

The plaintiff asserted his supervisor, Walter Terry, engaged in a pattern of discriminating against him and creating a hostile environment since 2005, including disciplinary actions in 2006 and 2007.   DeSorbo declaration ex. A, at 00017; 00025. After receiving the June 22, 2008, removal from employment, the plaintiff filed a grievance and the Union, against plaintiff's wishes, settled the grievance, returning the plaintiff to work with a "time served Suspension."  *Id.*, at 00018, 00020; ex. B, at 00018; 00280.  He was also to be provided with reasonable accommodation. DeSorbo declaration ex. B, at 00018. During the investigation, Walter Terry asserted plaintiff's removal from employment was part of progressive discipline, due to

outside the 45 days allowed by law, the EEO office dismissed plaintiff's claims relating to these prior disciplinary actions. *Id.,* at 00051-00054.  Thus, the formal EEO investigation considered only events surrounding the June 22, 2008, termination.  *Id*., at 00060.

4

plaintiff's consistent absence from his assigned work area.  DeSorbo declaration ex. A, at 00020, 00141-142, 00145, 00159-00161.  Terry noted that the plaintiff never requested any type of reasonable accommodations, nor did he notice any impairment. *Id*., at 00141; see also Evans depo. at 112-114.  This complaint was closed on July 8, 2009, with a finding of no discrimination.[5]  DeSorbo declaration ex. B, at 00017; defendant ex. 7 to plaintiff depo.  The EEO final decision was affirmed on appeal to the EEOC.  Defendant ex. 8 to plaintiff depo.

The plaintiff filed a second EEO counseling request on May 11, 2009, and a charge on August 10, 2009, alleging retaliation and disability discrimination due to a second Notice of Removal dated March 25, 2009, for excessive unscheduled absences.[6]  Complaint, ¶¶ 19-24;  DeSorbo declaration ex. B, at 00006; 00028; 00041; 00263-265.  Although plaintiff blamed his supervisor and manager, this termination was issued by Patricia Hardy, attendance control supervisor.  DeSorbo declaration ex. B, at 00042; 00192-195; 00263-266.  Wallace proposed it to Hardy and then Evans, as manager, concurred in the termination.  Evans depo. at 108-109;

---

[5]The Final Agency Decision noted that the record did not support a finding that the plaintiff was substantially limited in any major life activity or that he suffered from a substantial impairment, and hence the evidence was insufficient to support a finding of disability as defined by the Rehabilitation Act.  Defendant ex. 7 to plaintiff deposition, at 9.

[6]Under the defendant's system, three separate incidents of unscheduled absences in a 90 day period triggered the automatic system to suggest discipline.  Evans depo. at 85-89; Wallace depo. at 42-43, 45, 55.

Wallace depo. at 53-54; plaintiff ex. 3 to Wallace depo.  After filing a grievance, the plaintiff was again returned to work.  Complaint ¶ 26.  Based on arbitration of this grievance, the plaintiff was also awarded six months back pay, all accrued benefits, and the termination was changed to a Letter of Warning.  DeSorbo declaration ex. B, at 00018; defendant ex. 9 to plaintiff depo.

The Final Agency Decision, dated August 17, 2010, noted that plaintiff claimed no limitation or restriction in his ability to perform major life activities and further that he could perform his job with or without reasonable accommodations.  Defendant ex. 9 to plaintiff depo., at 11.  Thus, plaintiff was again found not to have an actual disability or a record of disability.  *Id.*  Further, there was no evidence that management regarded him as having a disability.  *Id.*, at 12.  The EEOC decision also found that the decision makers for this termination had no knowledge of plaintiff's prior EEO activity, and thus there could be no retaliation.  *Id.*, at 16-17.  Douglas Wallace, one of plaintiff's supervisors, found out plaintiff had prior EEO activity in the course of investigating plaintiff's March 2009 complaint.  Wallace depo. at 19.

Plaintiff performed the actual work requirements of his job well.  Evans depo. at 74; Austin[7] depo. at 18.  However, his frequent absences from his work area

---

[7]Anthony Austin was one of plaintiff's prior supervisor's.  Austin depo. at 16.

created a problem with plaintiff's work performance.[8]  Evans depo. at 73-74, 77;

Austin depo. at 19, 35.  Austin and Terry, co-equal supervisors of plaintiff, discussed

this too.  Austin depo. at 49-50.  Plaintiff's current supervisor, Billy Darty also stated

that his problems with plaintiff include the plaintiff being late a lot of days and that

he would not stay by his machine.  Darty depo. at 12, 19.  Douglas Wallace, yet

another supervisor, had the same complaints as well.  Wallace depo. at 20, 24, 26.

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of

material fact, leaving final judgment to be decided as a matter of law. *See* Federal

Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is material if it is a legal

element of the claim under the applicable substantive law which might affect the

outcome of the case.  It is genuine if the record taken as a whole could lead a rational

trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc.*, 121 F.3d

642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the

---

[8]According to Austin, in one of his counseling sessions with plaintiff concerning
excessive absences, plaintiff mentioned he had ADD.  Austin depo. at 41-45.  Austin relayed this
to Billy Lawley and Greg Wilson, his managers, who suggested he get documentation, but
plaintiff never brought anything in. Austin depo. at 46-48.  Yet another supervisor, Douglas
Wallace, was unaware plaintiff had ADD/ADHD until plaintiff's second EEO claim was made.
Wallace depo. at 17-18.

light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005). The language of Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. With these standards in mind, the court considers each of the

8

plaintiff's claims.

## IV.  DISCUSSION

### A.  Discrimination

The ADA provides that no covered employer shall discriminate against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Although the United States is not considered an "employer" for purposes of the ADA, it is an employer under the Rehabilitation Act, which adopts the same liability standards as the ADA.  42 U.S.C. § 12111(5)(B)(I); *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir.2000); *Cash v. Smith*, 231 F.3d 1301, 1305, n.2 (11th Cir.2000).

To establish a prima facie case under the ADA, the plaintiff must show that (1) he has, or is perceived to have, a disability; (2) he is a qualified individual "which is to say, able to perform the essential functions of the employment position that he holds ... with or without reasonable accommodations; and (3) he was discriminated against because of the disability." *Carruthers v. BSA Advertising, Inc*., 357 F.3d 1213, 1215 (11th Cir.2004) (quoting *Williams v. Motorola, Inc*., 303 F.3d 1284, 1290 (11th Cir.2002).  *See also Greenberg v. Bellsouth Telecomms., Inc*., 498 F.3d 1258,

1263 (11ᵗʰ Cir.2007).  The plaintiff must also show that the employer was aware of, meaning had "actual knowledge" of the disability and that the unfavorable employment decision was due to, or because of, the disability. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1183 (11ᵗʰ Cir.2005), citing *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1262 (11ᵗʰ Cir.2001); *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 800 (11ᵗʰ Cir.2000).

The defendant disputes that the plaintiff's condition constitutes a "disability" as that term is defined by the statute.  "Disability" is defined under the ADA to include: (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such impairment; or (c) being regarded as having such impairment. *See* 42 U.S.C. § 12102(1).  EEOC regulations state that "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). To be entitled to the protections of the ADA, an individual must have limitations caused by his impairment.  "It is insufficient for individuals attempting to prove disability status ... to merely submit evidence of a medical diagnosis of impairment. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002). Here, the plaintiff refutes that ADD/ADHD limits his ability to perform any major life activity. He neither requested

10

nor needed any accommodation to perform his job because of ADD/ADHD.[9]

The plaintiff merely asserts that he was discriminated against in the form of a hostile work environment because of his disability. The plaintiff also does not allege that the consistent criticisms of his work, namely that he was often absent from his work station, were due to any limitation in a major life activity. Plaintiff has failed, as a whole, to show how ADD/ADHD restricts his abilities as compared to those of an average person.  The plaintiff has wholly failed to create a genuine issue of material fact as to whether his condition amounts to a disability as defined under the ADA or the ADAAA.

Even considering the plaintiff's allegations of disability under the more favorable definition contained in the ADAAA, the plaintiff's claim of disability still fails.   The amendments instruct that a court's consideration of whether an "impairment substantially limits a major life activity" must be made without consideration of the mitigating effects such as "medical supplies, equipment, or appliances." 42 U.S.C. § 12102(4)(E).

Similarly, the plaintiff has failed to establish that he has a record of

---

[9]Any argument that the defendant failed to accommodate the plaintiff's disability is also foreclosed, as the evidence reflects that the plaintiff failed to ever request any accommodation. *See Gaston v. Bellingrath Gardens & Home, Inc*., 167 F.3d 1361, 1363-1364 (11th  Cir.1999) (plaintiff bears burden of requesting reasonable accommodations).

impairment.  In order to base a discrimination claim on this definition, plaintiff must show that he was classified or misclassified as having a mental or physical impairment that substantially limits one or more major life activities. 29 C.F.R. § 1630.2(k).  Plaintiff must also prove that the employer was aware of the record in question. Plaintiff has failed to allege a claim under this definition of disability. First, as discussed above, plaintiff has not established a factual issue that his impairment in any way substantially limits a major life activity. Second, the plaintiff has submitted no showing a "record of impairment." While plaintiff's medical records concerning treatment for ADHD were provided to his employer and in turn to the court, the plaintiff offered no evidence that ADHD substantially affected his ability to engage in any major life activity, and specifically denied the same.

The court has also considered whether the evidence is sufficient to create a genuine of material fact that the plaintiff was "regarded as" having an impairment that substantially limits one or more major life activities. See 29 C.F.R. § 1630.2(1). Given the allegations and evidence before the court, no reasonable jury could conclude that the defendant regarded the plaintiff as substantially limited in a major life activity. Mere knowledge that the plaintiff suffered from ADHD is not sufficient to show that the defendant perceived him as disabled; neither is the fact that the plaintiff informed the defendant that he took medication for ADHD. The impairment

"must be viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks." *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 913 (11th Cir.1996).   Here there is no evidence that the defendant regarded the plaintiff as having an impairment.   Defendant's awareness of plaintiff's condition is insufficient to establish that the plaintiff's supervisor's regarded him as having a disability.   *See e.g., Simpson v. Alabama Dept. of Human Resources*, 311 Fed.Appx. 264, 268 (11th Cir.2009).

### B.  Retaliation

The plaintiff concedes he cannot prevail on his retaliation claims.   Plaintiff's response (doc. 38) at 32.   As such, the court shall dismiss those counts of the complaint, Counts IV and V, with prejudice.

### C.  Hostile Environment Harassment

The plaintiff asserts that he was subjected to a hostile work environment by repeatedly being subjected to disciplinary actions when other employees were not. The plaintiff and defendant agree that the appropriate standard by which this court should analyze this claim is the same as the Title VII standard for hostile work environment.   Defendant's memorandum at 22; plaintiff's response at 29.   The Eleventh Circuit has implicitly approved the use of such a standard in disability harassment claims.   *See Burgos v. Chertoff,* 274 Fed.Appx. 839 (11th Cir.2008),

holding that

> The employee has the burden of proving a hostile work environment. *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir.1995). To establish a prima facie case for a hostile work environment claim, a plaintiff must demonstrate that: (1) she belongs to a protected group; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and thus create a discriminatorily abusive work environment; and (5) the employer is responsible for that environment under a theory of either direct or vicarious liability.

*Id.* at 842; citing *Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1275 (11th Cir.2002). *See also Woodruff v. School Bd. of Seminole County, Fla*., 304 Fed. Appx. 795, 799 (11th Cir.2008) ("Assuming that such a claim is cognizable, we conclude from the record that the district court properly found that Woodruff failed to present a prima facie case of hostile work environment under the ADA...."); *Hawkins v. Counseling Associates, Inc.,* 504 F.Supp.2d 419, 428-429 (E.D.Ark.2007); citing *Jeseritz v. Potter*, 282 F.3d 542, 547 (8th Cir.2002) ("As the Eighth Circuit has done, this Court will assume that a disability-based cause of action for discrimination under a hostile work environment theory exists"); *Schwertfager v. City of Boynton Beach,* 42 F.Supp.2d 1347, 1366 (S.D.Fla.1999) ("Those courts which have proceeded under the assumption that an ADA hostile environment claim could be actionable, have analyzed the plaintiffs' claims under the same rubric used in assessing hostile work

environment claims brought pursuant to Title VII").

Assuming that the plaintiff could establish that he was a member of a protected class, and assuming that the plaintiff could establish the other elements of such a claim, this claim must still fail as there is no evidence tending to establish the other four elements of plaintiff's prima facie case. Specifically, the plaintiff complains about discrete incidents where he was subjected to discipline. Even if the court found at least some of these disciplinary actions were unfairly administered, they are still discrete actions with specific dates of occurrence. Such actions are not akin to a hostile environment. A hostile environment claim involves repeated conduct, such as "discriminatory intimidation, ridicule, and insult. *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir.2008). In contrast, a discrete act of discrimination is an adverse employment action that constitutes an actionable unlawful employment practice on its own, such as termination, failure to promote, or denial of transfer. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

In order to be actionable, the environment must be both objectively offensive-one that a reasonable person would find hostile or abusive- and subjectively offensive-one that the victim in fact did perceive to be so. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-371, 126 L.Ed.2d 295 (1993). The

demanding standards for judging abusive working environments were designed to prevent civil rights statutes from becoming "general civility code[s]." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998).

The plaintiff addresses seven disciplinary actions against him dating back to 2003. In other words, the plaintiff complains of seven instances of "harassment" over the course of approximately seven years. The court is of the opinion that even unfair discipline, occurring approximately one time a year, is not within the confines of "severe and pervasive" from an objective or subjective point of view. *See e.g., Woodruff v. School Board of Seminole County, Florida*, 304 Fed.Appx. 795, 799 (11th Cir.2008). *See also Mont-Ros v. City of West Miami,* 111 F.Supp.2d 1338, 1362 (S.D.Fla.2000) (To be actionable the harassment must be so severe and pervasive as to "have the purpose or effect of unreasonably interfering with [Plaintiff's] work performance or creating an intimidating, hostile or offensive environment."). As such, the court shall grant the defendant's motion for summary judgment on these claims by separate order.

## V. CONCLUSION

In consideration of the foregoing, having found no genuine issues of material fact remain in this case and that summary judgment in favor of the defendant and

against the plaintiff is due to be granted, the court shall enter an appropriate order.

**DONE** and **ORDERED** this the 19th day of May, 2011.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE